IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR ENTERTAINMENT, LLC,<br>    Plaintiff,<br><br>v.<br><br>BLUE MOON ENTERTAINMENT, LLC,<br>and RYAN UPCHURCH,<br>    Defendants. | Case No. 3:21-cv-817<br>District Judge Campbell<br>Magistrate Judge Frensley |

# REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff DR Entertainment, LLC, ("DR Entertainment") filed this Complaint against Blue Moon Entertainment, LLC, ("Blue Moon") and Ryan Upchurch ("Upchurch") (collectively "Defendants") on October 27, 2021. Docket No. 1. DR Entertainment alleges a breach of contract claim against Blue Moon. *Id*. at 4. DR Entertainment likewise alleges an intentional interference with contract claim and a statutory breach of contract claim against Ryan Upchurch. *Id*. at 5-6.; *see* Tenn. Code Ann. § 47-50-109.

Pending before the Court is Defendants' Motion to Set Aside Entry of Default. Docket No. 22. Defendants filed a memorandum in support of their motion.[1] *Id*. Plaintiff filed a Response in Opposition to Motion to Set Aside Entry of Default. Docket No. 24. Defendants filed a Reply in Support of Motion to Set Aside Entry of Default. Docket No. 26. For the reasons discussed below, the undersigned finds that good cause exists under Fed. R. Civ. P. 55(c) to set aside entry of default. Therefore, the undersigned recommends that Defendants' Motion to Set Aside Entry of Default

---

[1] Without differentiating between the two, Defendants filed the memorandum as part of their Motion. Docket No. 22.

(Docket No. 22) be **GRANTED**.

## II.  BACKGROUND

On March 3, 2021, DR Entertainment entered into a Booking Agreement with Blue Moon Entertainment. Docket No. 1, ¶ 14; Docket 1-1, p. 1. The Booking Agreement obligated country-rap artist Ryan Upchurch to perform at The Groove Music Hall on June 12, 2021. Docket No. 1, ¶¶ 11, 14. The Booking Agreement also obligated DR Entertainment to pay Blue Moon an initial $30,000.00 deposit.[2] *Id*. at ¶ 15. DR Entertainment paid the deposit and began to promote and prepare for Upchurch's concert. *Id*. at ¶ 16. DR Entertainment sold out Upchurch's June 12 concert at The Groove Music Hall. *Id*. at ¶ 17.

On May 26, 2021, Blue Moon informed DR Entertainment that Upchurch would be unable to perform due to concerns about Upchurch's asthma. *Id*. at ¶ 18-19. However, neither Blue Moon nor Upchurch provided DR Entertainment with proof of Upchurch's asthma. *Id*. at ¶ 20. Upchurch went on to cancel all his other upcoming 2021 performances. *Id*. at ¶ 21.

DR Entertainment then issued a press release drafted by Defendants, cancelling the June 12 concert. *Id*. at ¶¶ 22-23. The press release did not contain any references to Upchurch's asthma, but the press release did contain a link to a YouTube video entitled "Diaper Neck." *Id*. at ¶¶ 24-25. In this YouTube video created by Upchurch, Upchurch allegedly asserted that he had cancelled his upcoming performance dates because he needed to deal with legal issues pertaining to an on-going domestic dispute. *Id*. at ¶ 26. DR Entertainment further alleges that Upchurch did not discuss his asthma in the YouTube video and that Upchurch has removed the video from public view. *Id*. at ¶¶ 27-28.

Blue Moon returned the $30,000.00 deposit and did not attempt to reschedule the cancelled

---

[2] For a full breakdown of payments due to Defendants under the Booking Agreement, see Docket No. 1-1, pp. 1-2.

2

concert date. *Id*. at ¶¶ 29-30. Due to short notice, DR Entertainment was not able to rebook the venue for June 12. *Id*. at ¶ 31. Accordingly, DR Entertainment claims losses of $87,000.00 from refunding ticket sales, lost concession sales, lost parking sales, and significant administrative expenses. *Id*. at ¶¶ 32-33.

DR Entertainment filed its Complaint on October 27, 2021. Docket No. 1, p. 7. On November 1, 2021, DR Entertainment's process server left a notice at Upchurch's property on Ed Harris Road and contacted Blue Moon representatives in an attempt to schedule service. Docket No. 24, p. 3; Docket No. 24-1. By November 9, 2021, DR Entertainment's process server had lost contact with Blue Moon representatives and was attempting to serve Upchurch for the third time. Docket No. 24, p. 3; Docket No. 24-2.

The Cheatham County Sheriff successfully served Defendants on December 22, 2021.[3] Docket No. 14; Docket No. 15; Docket No. 24, p. 3. Because Defendants had failed to plead or otherwise defend, DR Entertainment filed for Entry of Default on February 2, 2022, and Clerk of Court, Lynda M. Hill, granted entry of default on February 23, 2022. Docket No. 16; Docket No. 18; Docket No. 22, p. 1. Nearly three months after being served, Defendants finally contacted DR Entertainment's counsel on March 15, 2022, attempting to settle the claims against Defendants. *Id*.; Docket No. 22, p. 1. However, the parties were unable to reach a settlement agreement, so on May 9, 2022, Defendants filed this Motion to Set Aside Entry of Default. Docket No. 22.

III. **LAW AND ANALYSIS**

a. **Motion to Set Aside Entry of Default**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

---

[3] DR Entertainment says that the Cheatham County Sheriff served Defendants on December 21, 2022, but the Proof of Service receipts show that the Sheriff served Defendants on December 22, 2022. Docket No. 14; Docket No. 15.

party's default." Fed. R. Civ. P. 55(a). However, before the clerk or court enters a default judgment against a party, the court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). In the Sixth Circuit, the good cause bar for setting aside an entry of default is a low one, and courts have "considerable latitude" or discretion to relieve a party from entry of default.[4] *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). And in the interests of justice, federal courts prefer to reach the merits of a claim rather than dismiss a claim for procedural flaws. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983).

In determining whether good cause to set aside an entry of default has been shown, the Court of Appeals for the Sixth Circuit has instructed courts to consider three equitable factors: (1) whether culpable conduct of the defendant led to the defendant's default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff will be prejudiced. *United Coin*, 705 F. 2d at 844-46 (quoting *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)); *Waifersong*, 976 F.2d at 292.

Default judgment "is a drastic step which should be resorted to only in the most extreme cases." *United Coin*, 705 F.2d at 845. As a result, Sixth Circuit courts are extremely forgiving to defaulting parties. *United States v. $22,050 U. S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010).

### b. Whether Culpable Conduct of the Defendants Led to the Defendants' Default

The Court should consider whether a defendant's culpable conduct led to the default "in the general context of determining whether petitioner is deserving of equitable relief." *Waifersong*, 976 F.2d at 292. For a defendant's conduct to be culpable, a defendant must either intend to thwart

---

[4] The Court uses the term "low" generally and relatively. Generally, the bar is low because courts prefer to adjudicate claims on the merits, so courts are lenient with setting aside entry of default. *Rooks v. Am. Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959) (citations omitted). The bar is also low relative to the standard for setting aside a default judgment under Fed. R. Civ. P. 60(b). *See INVST Fin. Group Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987).

judicial proceedings or show a reckless disregard for the judicial proceeding. *Southern Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005) (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)). A defendant's mere carelessness is insufficient to constitute culpable conduct. *Southern*, 146 F. App'x at 777.

Defendants argue that they did not act culpably. Docket No. 22, p. 10. Rather, Defendants aver that due to Upchurch's "celebrity" status, Upchurch was constantly dealing with trespassers and reporting them to the police, so Upchurch would be "wary" of an "unidentified process server" on his property. *Id*. While still denying culpable conduct, Defendants argue that this is but one factor in the balancing test and that a finding against the Defendants on this factor can and should be outweighed by the other factors. *Id.* at 10-11 (citing *Berthelsen v Kane*, 907 F.2d 617 (6th Cir. 1990); *Big Burger, Inc. v. Big Burgz, LLC*, Case No. 19-cv-13413, 2020 U.S. Dist. LEXIS 200630 (E.D. Mich. Oct. 28, 2020)).

DR Entertainment responds that Defendants' conduct was culpable because Defendants evaded service. Docket No. 24, pp. 2-3. DR Entertainment presents proof that the process server identified himself to Defendants and made multiple attempts to schedule service and serve Defendants. *Id*. at 3; Docket No. 24-1; Docket No. 24-2. DR Entertainment asserts that, once served, Defendants made no attempt to contact DR Entertainment's counsel, and when Defendants did contact counsel, Defendants offered no excuse for their failure to respond or defend. Docket No. 24, pp. 3-4. DR Entertainment contends that Defendants' cited case law is inapplicable here because Defendants lack a meritorious defense. *Id*. at 4.

DR Entertainment has demonstrated that its process server made multiple unsuccessful attempts to serve Defendants.[5] *Id*. at 3; Docket No. 24-1; Docket No. 24-2. The process server

---

[5] While the process server apparently did reach a Senior Agent from Blue Moon to try and schedule service on one occasion (*see* Docket No. 24-1), the Court finds this contact meaningless as the Senior Agent never set up service.

5

made his first attempt to serve Defendants on November 1, 2021. Docket No. 24-1. By November 9, 2021, the process server was attempting to serve Upchurch for the third time. Docket No. 24-2. Likewise, one agent at Blue Moon, who initially responded to the process server's messages, stopped responding after the process server tried to follow up. *See* Docket No. 24-1; Docket No. 24-2. The process server had emailed "everyone listed at Blue Moon" multiple times and had sent texts to the best-known phone numbers for Upchurch. Docket No. 24-2. Given these attempts to contact Defendants, Upchurch should have known he was going to be served, so he should have expected a process server on his property, not a trespasser. Docket No. 22, p. 10. Because the process server had made so many unsuccessful attempts to serve Defendants, DR Entertainment had the Cheatham County Sheriff serve Defendants on December 22, 2021. Docket No. 24, p. 3. Accordingly, the Court finds Defendants acted culpably because Defendants attempted to thwart the proceedings by evading service.

Beyond that, Defendants provide no reason why they waited almost three months to contact DR Entertainment's counsel or five months to even make an appearance in this Court. Docket No. 24, p. 3; Docket No. 20; Docket No. 21. After being served on December 22, 2021, (Docket No. 14; Docket No. 15), and having default entered against them on February 23, 2022, (Docket No. 18), Defendants waited until March 15, 2022, to reach out to opposing counsel (Docket No. 22, p. 1). Nearly two months later on May 9, 2022, Defendants' counsel made their first appearance in this Court. Docket No. 20; Docket No. 21. Therefore, the Court also finds that Defendants displayed a reckless disregard for the proceedings by failing to respond, timely moving to set aside entry of default, or appear in this Court. *See Berthelsen*, 907 F.2d at 622; *Shepard*, 796 F.2d at 194.

Defendant's culpable conduct weighs against setting aside entry of default.

### c. Whether the Defendant Has a Meritorious Defense

To establish the existence of a "meritorious defense," the Defendant does not have to demonstrate a likelihood of success, but simply must state a defense that is "good at law." *Southern*, 146 F. App'x at 777 (citation omitted). The primary consideration to this inquiry is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Id.*; *see also Burrell v. Henderson*, 434 F.3d 826, 834 (6th Cir. 2006). When determining if the defendant has a meritorious defense, courts consider whether there is a "hint of a suggestion" that the alleged defense would succeed if proven at trial, not the likelihood of success of that defense. *INVST*, 815 F.2d at 399 (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Defendants argue that the "Force Majeure" clause of the Booking Agreement serves as a complete defense to all three of DR Entertainment's claims. Docket No. 22, pp. 6, 8-9. Defendants raise failure to mitigate damages as an affirmative defense to DR Entertainment's breach of contract claim against Blue Moon. *Id.* at 7. Defendants also assert that DR Entertainment has failed to allege sufficient facts to support its intentional interference with contract claim against Upchurch. *Id.* at 8. Defendants ultimately contend that a combination of these three defenses would serve as a complete defense to DR Entertainment's claims. *Id.* at 4-9.

DR Entertainment responds that the "Force Majeure" clause does not excuse Defendants' nonperformance and would not provide a complete defense. Docket No. 24, pp. 4-5. DR Entertainment further responds that even if Defendants are successful in raising a failure to mitigate defense, such a defense would not be complete because the defense would still require a finding of Defendants' liability. *Id.* at 5. Finally, DR Entertainment contends that it has pleaded enough facts to support a plausible claim for relief capable of defeating a future 12(b)(6) motion

to dismiss. *Id*. at 5-6.

According to the Booking Agreement, the law of the state where Blue Moon resides will govern the contract. Docket No. 1-1, ¶ 15. Blue Moon resides in Tennessee. Docket No. 1, ¶ 2. Therefore, Tennessee law governs the contract, and Tennessee contract law requires courts to construe the language of a contract in "its plain, ordinary, or popular sense." *Bob Pearsall Motors, Inc. v. Regal Chrylser-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (citing *Guardian Life Ins. Co. v. Richardson*, 129 S.W.2d 369 (Tenn. Ct. App. 1939)). The plain and ordinary construction of the Booking Agreement calls for Upchurch to perform at The Groove Music Hall on June 12, 2021. Docket No. 1-1, ¶ 2. The "Force Majeure" clause reads, "The Parties shall be excused from their obligations under this Agreement in the event of proven sickness, accident, riot, strike, epidemic, act of God, or any force majeure event or occurrence beyond their respective control." Docket No. 1-1, ¶ 13. The plain and ordinary construction of the "Force Majeure" clause is that a party would not be in breach for nonperformance if any of the listed events occurred, including proven sickness. *Id*. Therefore, it follows that if Upchurch could prove his illness, Defendants would be excused from performance under the contract.

Notably, the contract calls for a single performance on June 12, 2021. DR Entertainment cites to Restatement (Second) of Contracts § 269 (1981), arguing that a proven sickness would only temporarily suspend Upchurch's duty to perform. However, DR Entertainment's reliance on § 269 and *Cameron v. Lawrence Leather Co.*, is misplaced. 242 S.W.2d 65, 67 (Tenn. Ct. App. 1960). *Cameron* involved ongoing employment where the employee had a continuing obligation to perform his duties at work, despite the employee's physical ailments. 242 S.W.2d at 65. By contrast in this case, Upchurch and Blue Moon contracted for only one performance. Additionally, Tenn. Code Ann. § 47-50-112 states that all contracts "shall be enforced as written." As written,

the Booking Agreement calls for one performance specifically on June 12, 2021, and states that proven sickness excuses performance by the parties. Docket No. 1-1, ¶¶ 2, 13. Nowhere does the Booking Agreement state that the parties must attempt to reschedule. Rather, the "Force Majeure" clause of the Booking Agreement simply states, "The parties shall be excused from their obligations under this Agreement in the event of proven sickness…." *Id*. at ¶ 13. To find an interpretation suggesting that Defendants had a duty to reschedule the performance would be to look beyond the plain and ordinary meaning of the "Force Majeure" clause.

The burden on Defendants is low because the Defendants need only show that their defense has a "hint of a suggestion" of success. *INVST*, 815 F.2d at 399 (citation omitted). Defendants meet this burden easily because proven sickness would completely excuse Defendants' obligations under the Booking Agreement, and Defendants should be capable of producing evidence regarding Upchurch's sickness. If sickness were proven at trial, the case would result in a different outcome than the one that would be achieved by default judgment because Defendants would not be liable. Therefore, all of DR Entertainment's claims would fail because each claim requires Defendants to have breached the Booking Agreement.

The Court need not address either the failure to mitigate affirmative defense or the contention that DR Entertainment fails to state a claim upon which relief can be granted because the "Force Majeure" clause would be a complete and meritorious defense.

Defendants' meritorious defense weighs in favor of setting aside entry of default.

### d. Whether the Plaintiff Will be Prejudiced

Under the third factor, mere delay is insufficient to establish prejudice. *INVST*, 815 F.2d at 398 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). For there to be prejudice, the setting aside of entry of default "must result in tangible harm such as loss of evidence, increased

9

Case 3:21-cv-00817    Document 27    Filed 06/29/22    Page 9 of 11 PageID #: 98

difficulties of discovery, or greater opportunity for fraud or collusion." *Southern*, 146 F. App'x at 778 (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Defendants argue that all the evidence supporting DR Entertainment's claims or Defendants' defenses still exists and will be turned over during discovery. Docket No. 22, p. 4. Defendants also note that DR Entertainment has not alleged fraud or collusion. *Id*.

DR Entertainment does not contend that it has been prejudiced. Docket No. 24, p. 6. But, DR Entertainment does assert that the three good cause factors must be balanced against each other and that Defendants' culpable conduct and lack of a meritorious defense weigh heavily against setting aside defaults. *Id.*

Given the electronic nature of the relevant discoverable information, DR Entertainment cannot, and has not even attempted to, show "tangible harm" with respect to discovery or loss of evidence. Docket No. 22, p. 4; Docket No. 24, p. 6. Likewise, DR Entertainment does not argue that Defendants are engaging in collusion or fraud. Docket No. 24, p. 6. The delay that precipitated the entry of default is insufficient to establish prejudice because the delay has not created difficulties during discovery, resulted in the loss of evidence, or led to fraud or collusion. Accordingly, the Court ultimately finds that any prejudice to DR Entertainment from setting aside entry of default would be minimal.

The lack of prejudice to DR Entertainment weighs in favor of setting aside entry of default.

## IV. CONCLUSION

Although Defendants' culpable conduct weighs against setting aside entry of default, Defendants' meritorious defenses and the lack of prejudice to DR Entertainment weigh in favor of setting aside entry of default. When balanced, the good cause factors under Fed. R. Civ. P. 55(c) weigh in favor of setting aside entry of default.

For the foregoing reasons and in the interests of justice, the undersigned finds that good cause exists to set aside entry of default under Fed. R. Civ. P. 55(c). Therefore, the undersigned recommends that Defendants' Motion to Set Aside Entry of Default (Docket No. 22) be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. ' 636(b)(1); Fed. R. Civ. P. 72.

                                              **JEFFERY S. FRENSLEY**
                                              **United States Magistrate Judge**